1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

      - - - - - - - - - - - - -    X

      UNITED STATES OF AMERICA,    :    05 CR 400

                                   :

            -against-              :
                                        United States Courthouse
                                        Brooklyn, New York
      SERGE EDOUARD,               :

                                        February 9, 2010
            Defendant.             :    4:30 o'clock p.m.

      - - - - - - - - - - - - -    X


                    TRANSCRIPT OF SENTENCING
                BEFORE THE HONORABLE SANDRA L. TOWNES
                    UNITED STATES DISTRICT JUDGE


      APPEARANCES:


      For the Government:          LICHA NYIENDO
                                   Assistant United States Attorney
                                   271 Cadman Plaza East
                                   Brooklyn, New York


      For the Defendant:           DAVID MACEY, ESQ.



      Court Reporter:              Gene Rudolph
                                   225 Cadman Plaza East
                                   Brooklyn, New York
                                   (718) 613-2538


      Proceedings recorded by mechanical stenography, transcript
      produced by computer-aided transcription.
```

GR      OCR     CM     CRR     CSR

2

1          THE CLERK: Please raise your right hand.

2          (The interpreter is duly sworn by the clerk. He is
3 Yves Pierre.)

4          MR. MACEY: Judge, for some legal words, the
5 defendant could use the interpreter.

6          THE COURT: All right.

7          THE CLERK: Criminal case for sentencing, docket
8 number 05 CR 400, the United States of America versus Serge
9 Edouard.

10          Counsel, please state your names for the record.

11          MS. NYIENDO: Good afternoon, Your Honor.

12          Licha Nyiendo for the United States, standing in for
13 Walter Norkin.

14          THE COURT: Good afternoon.

15          MR. MACEY: Good afternoon, Judge.

16          David Macey on behalf of Mr. Edouard, who is
17 present.

18          THE COURT: Good afternoon.

19          Be seated, please.

20          THE INTERPRETER: Yves Pierre, official court
21 interpreter.

22          THE COURT: The interpreter has been sworn.

23          Mr. Edouard pled guilty to conspiracy to import five
24 kilograms or more of cocaine, a Class A felony. He pled
25 guilty before then Magistrate Judge Matsumoto of this Court,

GR        OCR        CM        CRR        CSR

1  who is now a district judge, but he pled guilty on
2  February 25, 2008, in this court.
3        I have had an opportunity to review the presentence
4  investigation report.  After reviewing that report it is the
5  finding of the Court that Mr. Edouard acted voluntarily in
6  pleading guilty, that he fully understood his rights and the
7  consequences of his plea, and that there is a factual basis
8  for the plea, which I am satisfied he understood the charge
9  and, as I said, voluntarily pled guilty to it.
10       I therefore accept the plea of guilty to conspiracy
11 to import five kilograms or more of cocaine.
12       Now, I want to mention for the record, so you can
13 let me know if I have missed anything, everything that I have
14 reviewed.
15       I have reviewed the presentence -- I'm sorry -- the
16 plea agreement.  I have also reviewed the October 13, 2008,
17 letter from Mr. Macey, in which the defendant objects to
18 certain portions of the presentence investigation report; the
19 December 3, 2009, sentencing letter regarding the defendant's
20 motion for downward departure pursuant to United States
21 sentencing guideline Section 5K2.0, and attached to that, at
22 least in the form that I have it, there are letters and I have
23 read letters from the defendant's family and friends and also
24 letters attached to a letter dated December 15, 2009, offered
25 as evidence of the defendant's good character and these are

1 letters from municipal authorities.

2 In addition, I have received and reviewed a
3 June 18, 2009, letter from the government and in that letter
4 Mr. D'Allesandro, at that time the person prosecuting this
5 case indicates that he believes that matters involved in the
6 objections to the presentence report may be resolved without
7 the need for a hearing.

8 I have also received and reviewed the letter dated
9 December 7, 2009, from Mr. Norkin, and this letter shows me
10 that we do need a hearing with regard to the role adjustment
11 in the presentence report. In the last paragraph the
12 defendant claims that no upward role adjustment is applicable
13 contrary to the guidelines calculation in the PSR, which finds
14 that an adjustment of three points is applicable.

15 The government respectfully submits that an upward
16 adjustment of two points is applicable.

17 The defendant argues that there should be no points
18 for role adjustment and, according to Mr. Norkin, this is
19 consistent with the plea agreement.

20 Why don't we do this. Let's first go
21 through -- because I don't agree with what the government says
22 entirely, so I am going to rule on these objections to the
23 presentence investigation report.

24 MR. MACEY: Judge, I don't know if it would clarify
25 the matter, but we agree with the December 7, 2009, letter of

1  Mr. Norkin.
2           THE COURT: You do?
3           MR. MACEY: We do, yes.
4           We agree with all the positions that he raises in
5  there. We are in complete agreement.
6           THE COURT: All right. I didn't get anything
7  saying that from you.
8           MR. MACEY: I apologize. We had kind of a last
9  minute agreement, Mr. Norkin and I, regarding the
10 clarification of these different things when we were not going
11 to be disputing their assertions. In fact, we concur.
12          THE COURT: Then there is one assertion -- so that
13 you agree that the total offense level is 37 instead of 38?
14          MR. MACEY: Yes, Judge.
15          THE COURT: All right. Let's look back at the
16 presentence investigation report in the calculations.
17          I am going to amend that report. I am going to
18 amend it, except I am looking for the presentence report.
19          Here it is.
20          MS. NYIENDO: Your Honor, there were also two
21 addendums to the PSR. I didn't hear Your Honor mention them.
22          THE COURT: Yes, that is correct. I didn't mention
23 them but I have received and reviewed the presentence
24 investigation report, the addendum to the presentence
25 investigation report, and the second addendum to the

6

presence investigation report.

Is there anything else that I have not reviewed?

MS. NYIENDO: I don't think so.

MR. MACEY: On behalf of the defense, I believe that's a complete history.

THE COURT: All right. Let's look at the objections to the presentence report.

There is one that the government agrees with. I do not. So I must rule on that. It has to do with the defendant's criminal history category.

Excuse me. I have to go through this. I had planned to just go through each one.

Paragraph ten of the objections to the presentence investigation report, as to paragraph 37 based on the above, the defendant objects to the calculation of the total criminal history points as five and the criminal history category of three.

All right. The change, even before I get to this, paragraph five, where the defendant objected to the leadership enhancement, the three levels, I am assuming that the government agrees, that they could not prove by a preponderance of the evidence that the defendant supervised, that this criminal conspiracy involved five people, and that he was a supervisor. The government has argued that it should be a two-level enhancement, which would mean that he was a

1  supervisor but the conspiracy did not involve five people.
2         So that I am amending in the presentence report, on
3  page six, paragraph 17, adjustment for role in the offense is
4  amended from three to two; and paragraph 19, the adjusted
5  offense level is 40; paragraph 20, after the adjustment for
6  acceptance of responsibility, the total offense level in the
7  defendant's case is 37.
8         Now, with regard to the objections in 36, paragraphs
9  36 and 37, the two-level or the two points added, the
10 defendant committed the instant offense less than two years
11 after release from imprisonment for the sentence imposed on
12 July 22, 1998.
13        That is true.  It is based upon his -- I am basing
14 it upon his testimony under oath when he entered his plea of
15 guilty.  I am looking at the transcript on page 25 of the
16 plea, lines 15 and 16.  The defendant -- well, maybe I should
17 start at line 12.
18        "The Court:  All right.  Mr. Edouard, I would like
19 you to state, in your own words, what you did in connection
20 with the acts charged in Count One of the indictment.
21        The defendant:  I was involved from my country, from
22 Haiti, sent some drugs to the United States.
23        The Court:  Did you make an agreement with people to
24 bring drugs from your country to the United States?
25        The defendant:  Yes, I did.

1  The Court: Did you knowingly and intentionally make
2  that agreement, knowing that it was not legal?
3  The defendant: Yes, I did. Yes, I did.
4  The Court: Can you tell me approximately when you
5  engaged in this activity, this agreement, to bring drugs to
6  the United States?"
7  Go to page 26:
8  "The defendant: I started like a long time ago,
9  since 1996. But after like 1998, I went back home. I stayed
10 home and I started sending drugs to the United States.
11 Court: Well, the indictment charges that you were
12 engaged in this activity between January 2000 and October 25,
13 2000.
14 Are those dates accurate? Sir?
15 The defendant: Yes, yes, that's accurate."
16 So it is based upon those statements, and I guess I
17 should go down because I know there is a Florida case and
18 there is a New York case, but lines 15 through 22 on page 26:
19 "Mr. Petruzzi: I think the point in question would
20 be where the drugs were being transported to.
21 The Court: Were they going to be imported into the
22 United States at some point?
23 The defendant: It was coming from the airport, from
24 Haiti to the airport JFK.
25 The Court: JFK in Queens?

9

1     The defendant: Yes."
2     Based upon that I do find that the defendant's
3  criminal history category is correct in the presentence
4  investigation report.
5     Is there anything else that we need to discuss
6  before we actually get to the sentencing?
7     MR. MACEY: We have a 5K2 request.
8     THE COURT: Yes. I know you do.
9     I think I -- did I mention that? I think I did.
10 That's in your December 9th --
11    MR. MACEY: December 3rd.
12    THE COURT: No. Yes, the December 3rd letter.
13    Anything else?
14    MR. MACEY: In terms of the calculation? I don't
15 have any other -- anything further in terms of calculation.
16    THE COURT: All right. Is there anything that you
17 would like to say for the record?
18    MR. MACEY: Yes.
19    May I address the 5K2?
20    THE COURT: To the calculation?
21    MR. MACEY: To the calculation, I believe, Judge, we
22 are in agreement. It is a level 37?
23    THE COURT: Yes.
24    MR. MACEY: And we would object in terms of the
25 category. My only response to the Court's -- I understand the

10

1  Court's position was one mention of the word, approximately,
2  describing the transcript.
3       THE COURT:  No.  He said, the dates in the
4  indictment are accurate and that includes a period of time --
5       MR. MACEY:  I agree.
6       It was everybody's I think intention, nobody knew
7  exactly when this particular conspiracy started.
8       THE COURT:  You know what, your client seems to say
9  it started in 1998.  I am looking at the time period in the
10 indictment.
11      MR. MACEY:  We understand.  We respect that.
12      THE COURT:  All right.
13      MR. MACEY:  We are at a criminal history Category 3
14 and a level 37.
15      THE COURT:  Yes.
16      MR. MACEY:  My only point would be to -- to argue
17 5K2 or to explain it.
18      THE COURT:  Yes.
19      MR. MACEY:  Would you like me to do that now?
20      THE COURT:  Yes.
21      MR. MACEY:  As the Court might be aware, this case
22 has been going on for sometime.  I think it's over two years
23 now.  I have been traveling back and forth from Miami in
24 numerous debriefings with Mr. Edouard involving I think every
25 law enforcement agency in the federal government and some

11

1 state and locals.
2     He's -- I think we have done in excess of over a
3 dozen debriefings. I don't know how many hours. We have
4 provided enormous amount of information to the government.
5     I am not able at this point to share everything and
6 the reason being, Judge, that we have an agreement with the
7 United States Attorney's Office that should Mr. Edouard
8 qualify for a Rule 35 in the Southern District of Florida,
9 they would take that information and they would use it in his
10 district and Mr. Norkin wanted me to be very clear not to say
11 anything that would be used towards the Southern District in
12 terms of my 5K2.
13     I just wanted to preface everything I say, that
14 there is a lot more to Mr. Edouard's cooperation. But looking
15 strictly in terms of what he's done in New York, I just wanted
16 to point out a couple of different things.
17     The first being, the case of Reginald Fleumont.
18 Mr. Fleumont was a fugitive from this district in Haiti.
19 Mr. Edouard provided information to his wife who was -- which
20 the information was relayed to a DEA agent down in
21 Port Au Prince Haiti. They identified the exact location of
22 Mr. Fleumont. They captured Mr. Fleumont and he was brought
23 back to the Eastern District of New York as a direct result of
24 Mr. Edouard's information.
25     In addition, Mr. Edouard provided extensive

1  information about the relationship Mr. Edouard had with
2  Mr. Fleumont, identifying all of his different tactics
3  involving money laundering and drug trafficking and I believe
4  he was quite valuable in terms of the identification, the
5  capture and the ultimate conviction of Mr. Fleumont.
6      As I point out in my letter, if we can get outside
7  of the -- the recognized exceptions for 5K1 and get into a
8  heartland departure involving helping the Court identify the
9  fugitives and capturing and bringing them to justice, I
10 believe that this is an appropriate means for the Court to
11 consider a departure, in addition to the countless hours of
12 information that Mr. Edouard provided as strictly to the
13 New York defendants and New York cases.
14     The other case -- actually a case that's still
15 ongoing, Mr. Edouard, the request of Mr. Norkin is going to
16 remain here in Brooklyn, so that he could continue his efforts
17 with a cellmate that he is going to be providing some
18 information for.  That investigation is ongoing.
19     THE COURT:  You may want to wait to have him
20 sentenced if that's the case.  Because I am not going to
21 consider anything that's ongoing.
22     MR. MACEY:  We will retract anything that's ongoing
23 and we will ask that the Court just consider Mr. Fleumont and
24 we will be comfortable with the agreement that we have with
25 the United States Attorney's Office regarding the Rule 35 and

13

we will hope to see Judge Townes on another day on that matter and provide a full picture of Mr. Edouard.

THE COURT: Would you like to be heard?

MS. NYIENDO: Pursuant to our letter of December 7, 2009, the government does not object to this Court taking into consideration under 5K2 any assistance the defendant has provided to the government.

THE COURT: All right. Would you like to be heard, Mr. Edouard?

THE DEFENDANT: I am really sorry for the American people. I am also sorry for my family, the pain that I caused them. It was not the right thing to do. Always in my mind to make something better for my kid. I didn't have, but it wasn't the right thing to do.

I really understand what life is really about. I am just asking for mercy.

My wife, who is not here today, the fact the thing that happened in Haiti, she cannot be here today. She would be here right now. I put so much pain to these people but I don't think anything worth for me to bring that suffering to my family. I think I learned my lesson.

Thank you very much.

MR. MACEY: Judge, may I make a statement on Mr. Edouard's behalf?

THE COURT: Yes.

1  MR. MACEY: I was told that the procedure is to
2  remain seated?
3  THE COURT: Yes.
4  MR. MACEY: Judge, I have had an opportunity in
5  federal court somewhat unique to have represented Mr. Edouard
6  for a number of years and I have seen Mr. Edouard really
7  evolve into the man that he is standing before the Court or
8  sitting before the Court today. He is -- his heart and his
9  spirit really is larger than life.
10  I've gotten calls from -- from countless family
11  members and friends and supporters from Haiti, talking about
12  Mr. Edouard's generosity and his -- just his need to help.
13  He's -- I've gotten phone calls from principals in
14  schools in Haiti, orphanages, teachers, just people that he's
15  provided medical treatment to and stuff like that. He
16  really -- he's special in that way, that he wants to help.
17  He's never been a violent man. He made a major
18  mistake in his life in terms of committing this crime, which
19  is completely egregious. He understands that. The suffering
20  that he has put his family through, I have seen the
21  devastation that it's had on his family and Mr. Edouard, he's
22  cried a lot of times in our conferences about the pain that
23  he's putting his family through.
24  We have had a number of sentences and we've had a
25  lot of people fly up from Haiti to support Mr. Edouard. He

1  really has a really tremendous network of people.  I just
2  want -- some of his brothers and sisters are here today to
3  support him.  It's really touching to see the love and the
4  support that he has from his family.  I think that that's a
5  tribute to the man that he is and to the man that he will
6  become.
7          I ask that the Court sentence him to the bottom of
8  the guidelines and with the caveat that we hope we will be
9  here one day again.
10         Thank you, Judge.
11         THE COURT:  All right.  I have considered all of the
12 documents which I have listed for the record.  I have
13 considered that statutorily the maximum sentence that can be
14 imposed is life, minimum sentence ten years.  In addition, I
15 have reviewed the advisory guideline range, total offense
16 level is 37, criminal history category three.  The
17 imprisonment range is 262 to 327 months.  The supervised
18 release range is at least five years.  The fine range is
19 20,000 to $4 million.
20         You have indicated that your client is unable to pay
21 a fine.  I will hear you right now on that.
22         MR. MACEY:  Judge, I have been coming here at my own
23 expense.  He had a home that was the source -- he was
24 renting -- the source to support his legal endeavors.  That
25 home was taken away.  He has no money.  He has no money in his

16

1  commissary.  There is no money for his lawyer.  The
2  devastation in Haiti has smashed his house.  His family has
3  been displaced.  They are in the mountains, the countryside
4  now, with friends.  There is just a complete and utter
5  financial disaster.
6          I would ask that the Court waive the fine.
7          THE COURT:  I thought he had property in the
8  Dominican Republic.
9          MR. MACEY:  We are actively involved in -- he had
10 property in the Dominican Republic.  It was taken from him.
11 We are working with the US Attorney's Office in the Southern
12 District of Florida.  The person that has that title, we
13 believe it should be given to the United States Government and
14 Mr. Edouard is actively trying to get that person to turn it
15 over to the government.  He doesn't receive any income as a
16 result of that property, nor is he entitled to it.
17         THE COURT:  All right.  In addition, I have
18 considered the factors pursuant to 18 USC, 3553(a) and
19 considered the nature and circumstances of this offense.
20         It is very serious.  The enormity of the crime
21 including the length or duration of the conspiracy, I agree,
22 is completely egregious.
23         I have also considered the history and
24 characteristics of the defendant.
25         Frankly, I might believe that Mr. Edouard is sorry

1  and he won't do it again if he had not already been convicted
2  of attempted criminal sale of a controlled substance in the
3  third degree and given a sentence that was not excessive, very
4  low.  He was given a great break in that case. That was in
5  1993, and I have considered other convictions that he has had
6  since that time.
7          I have also considered the things that you have told
8  me in the letters that I have received about his good works.
9          It is the Court's determination that the sentence
10 imposed should reflect the seriousness of the offense to which
11 the defendant pled guilty, to reflect or promote respect for
12 the law, and provide punishment, which I think he so richly
13 deserves.
14         You know, it is not as though Mr. Edouard stepped in
15 to the criminal arena for a very short time.  It appears to
16 this Court that he has been involved, just based on his
17 statements at the time that he entered his plea of guilty and
18 looking back at his criminal history.
19         Also I am of the opinion that my sentence should
20 promote deterrence, both general and specific deterrence, and
21 so, therefore, taking into consideration his cooperation and
22 the information that he has provided, I am not going to
23 sentence Mr. Edouard outside of the advisory guideline range
24 or downwardly depart.  Rather, I am sentencing Mr. Edouard to
25 the lowest end of the advisory guideline range, which is

18

1  262 months in the custody of the Attorney General, to be
2  served concurrently with the undischarged term of imprisonment
3  in the Southern District of Florida.
4      I have also taken into consideration the statements
5  made regarding his ability to pay a fine, and the fine is
6  waived.
7      The sentence of imprisonment is to be followed by
8  supervised release for a period of five years, with the
9  following special conditions:
10     The defendant shall participate in an outpatient
11 and/or inpatient drug treatment or detoxification program
12 approved by the Probation Department.
13     He shall pay the costs of such treatment and/or
14 detoxification to the degree he is reasonably able and shall
15 cooperate in securing any applicable third-party payment.
16     The defendant shall disclose all financial
17 information and documents to the Probation Department to
18 assess his ability to pay.
19     The defendant shall not consume any alcohol or other
20 intoxicants during and after treatment and/or detoxification,
21 unless granted a prescription by a licensed physician and
22 proof of same is provided to the Probation Department.
23     The defendant shall submit to testing during and
24 after treatment to ensure abstinence from drugs and alcohol.
25     The defendant shall not possess a firearm,

19

1  ammunition or destructive device.
2          With regard to the forfeiture obligation, it
3  confuses me a little. I think he has already paid $30,000
4  which was agreed to in the plea agreement.
5          MR. MACEY: Yes, Judge. That's been satisfied.
6          THE COURT: Is the government satisfied with that?
7          MS. NYIENDO: We are.
8          THE COURT: As far as forfeiture?
9          MS. NYIENDO: Yes, we are.
10         THE COURT: Okay. If he is deported or removed, the
11 defendant shall not reenter the United States illegally.
12         There is a $100 special assessment.
13         There is a remaining count which is open. I think a
14 Count Two?
15         MS. NYIENDO: Yes.
16         At this time the government moves to dismiss the
17 remaining count in the indictment as to the defendant.
18         THE COURT: That motion is granted. That second
19 count is dismissed.
20         There is a $100 -- did I say that -- special
21 assessment, which is due and payable as a result of his plea
22 to a felony in this court.
23         If Mr. Edouard wishes to appeal, he must file a
24 notice with the Court within ten days from today's date.
25         Thank you.

20

1  MR. MACEY: I just wanted to ask, if the Court could
2  recommend a northeastern facility so his family could have
3  contact.
4  THE COURT: Yes. As long as he understands there is
5  just a recommendation on the Court's part, that it is the
6  Bureau of Prisons that determines the facility in which he
7  will be housed.
8  MR. MACEY: He understands that.
9  Thank you, Judge.
10  THE COURT: Thank you.
11  (Matter concludes.)