SERGE EDOUARD
CORRECTIONAL INSTITUTION (NORTH LAKE)
Reg. No. 58048-004
P.O. BOX 1500
BALDWIN, MI 49304

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
MAY 12 2020
BROOKLYN OFFICE

BROOKLYN OFFICE
FILED
IN CLERKS OFFICE
US DISTRICT COURT E.D.N.Y.
MAY 12 2020

UNITED STATES DISTRICT COURT

FOR EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERGE EDOUARD, | \| |
| Movant, | \| |
| | \| Crim. No. 1:05-CR-00400-ERK |
| Vs | \| |
| | \| |
| | \| JUDICIAL NOTICE |
| UNITED STATES OF AMERICA, | \| |
| Respondent. | \| |

**EMERGENCY MOTION UNDER THE EXTRAORDINARY DANGEROUS NATURE OF THE COVID-19 OUTBREAK AMONG FEDERAL PRISON POPULATION.**

---

Serge Edouard, (hereinafter Mr. Edouard) hereby acting Pro se, gives Judicial Notice of the Extraordinary Dangerous Nature of the Covid-19 Outbreak Among Federal Prison Population and seeks modification of his current term of imprisonment to home confinement under the CARES Act Confinement Provision. Alternatively, Mr. Edouard proposes that his physical custody by adjusted to the probation portion of his custody under extraordinary circumstances. As to reasons why this request

should be GRATED, Mr. Edouard relies upon the following in support of his request for relief:

The BOP has **143,707** federal inmates in BOP-managed institutions and **10,226** in community-based facilities. The BOP staff complement is approximately **36,000**. As of 04/19/2020, there were **495 federal inmates** and **309 BOP staff** who have confirmed positive test results for COVID-19 nationwide. At that time, **155** inmates and **29** staff had recovered. There had been **22** federal inmate deaths and **0** BOP staff member deaths attributed to COVID-19 disease.

As of 04/26/2020, there are **799 federal inmates** and **319 BOP staff** who have confirmed positive test results for COVID-19 nationwide. Currently, **385** inmates and **124** staff have recovered. There have been **27** federal inmate deaths and **0** BOP staff member deaths attributed to COVID-19 disease.

**Nine inmates at the North Lake Correctional Facility in Baldwin tested positive for COVID-19, according to the state. Five prison employees also have the disease.**

Although, The Baldwin prison currently houses 1,591 inmates, and most of whom are immigrants who have been convicted of federal crimes, under the Equal Protection of the Fifth Amendment, all inmates are similarly situated and are to be treated the same way as those covered by the Attorney General's Memorandum. All Inmates housed at the Correctional Institution North Lake were sentenced under the same constitution, same laws, and regulations and courts as any other citizen of the United States, and wherefore may be accounted as another life in danger of contracting COVID-19.

Depriving inmates at North Lake CI from the protective order of Attorney General's Memorandum may represent an act of discrimination and deprivation of constitutional rights under the Equal Protection Umbrella.

On February 22, 2010 Mr. Edouard was sentenced to (262)-months. Credit of time served concurrently with the under charged term of (240) imprisonment imposed in the Southern District of Florida Case No. 1:05-CR-20459DMM. Mr. Edouard has served more than half on both jurisdictions of his physical custody term of judgment as required by the prong requirement by the U.S. Attorney General's Memo.

2

On April 3, 2020, Attorney General William Barr issued a Memo to the Bureau of Prisons, directing the BOP to expedite its use of home confinement, giving highest priority to medically vulnerable prisoners. Mr. Edouard is vulnerable at his near 58-years of age and now confined at the Correctional Institution North Lake, at 1805 WEST 32ND STREET BALDWIN, MI 49304

The CARES Act Home Confinement Provision permits the Director of the Federal Bureau of Prisons to lengthen the maximum amount of time that a prisoner may be placed in home confinement, if the U.S. Attorney General finds that emergency conditions will materially affect the functioning of the BOP. "Congress is giving the attorney general the authority to make that happen.

Mr. Edouard presents that he is near 58-years of age. Mr. Edouard's medical records reflect that he suffers from hypertension and respiratory health difficulties. Mr. Edouard's medical condition and age make him highly vulnerable to exposure and to imminent risk of contracting COVID-19 at his place of confinement because of the outbreak among federal prison population, and where there has been announced that in many detention centers and Federal Prisons all over the United States the coronavirus has claimed the lives of many prisoners and infected many others.

> The rapidly evolving of this public health crisis makes Mr. Edouard's case extremely critical. Prisons update of this April 13, 2020, at least four employees at the North Lake Correctional Facility have tested positive for COVID-19. Although, no inmates have tested positive, the truth of the matter is that in prison the probability of transmission of potentially pathogenic

3

organisms is increasing by crowding, delays in medical evaluation and treatment. Mr. Edouard presents that he is in danger of exposure to the COVID-19 at North Lake Correctional Institution where he is currently confined. The Bureau's coronavirus tracker shows at least four employees have tested positive which makes Mr. Edouard's circumstances a matter of concern. Mr. Edouard shares housing with 250 men in his housing unit. They sleep two to a cell and less than three feet apart. All inmates are expected to wear the same disposable mask every day. The phones are in pretty heavy use un-sanitized. Several inmates have been removed to an isolation wing because they are suspected of having COVID-19.

While the Bureau of Prisons has instituted measures to prevent the spread of coronavirus inside the prisons, the conditions at North Lake Correctional Institution make the spread of infectious diseases all but inevitable.

Public news reflects that other federal prisons are at hard-hit, for example, Oakdale, a low-security facility nearly 200 miles from New Orleans. The Federal Bureau of Prisons has 177,000 inmates under its care. In the past week, seven have died from COVID-19 and the BOP is reporting 91 inmates tested positive along with 50 staff members. It is believed that those numbers understate the real figures and that hundreds more inmates and staff are infected. **See. Att. Gen. Memo.**

New figures also showed more than 50 inmates have tested positive at FCC Butner, a federal prison complex in North Carolina, up from 11 reported inmate cases the day before.

Federal prisons in Connecticut and Ohio also have been stricken with outbreaks in recent weeks. As of Monday, 196 inmates and 63 staff members had tested positive for coronavirus at federal prisons across the U.S., according to data from the BOP.

The unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic has become apparent. Although there is not yet a known outbreak among the jail and prison populations, inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop. *See, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007), https://doi.org/10.1086/521910 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"); *see also* Claudia Lauer & Colleen Long, *US Prisons, Jails On Alert for Spread of Coronavirus*,

Associated Press (Mar. 7, 2020). The magnitude of this risk has grown exponentially since the announcement of the first federal prison case of COVID-19 in the United States.

Though the BOP has admirably put transmission mitigation measures in place, *see* Federal Bureau of Prisons, *Federal Bureau of Prisons COVID-19 Action Plan*, https://www.bop.gov/resources/news/20200313_covid-19.jsp, in the event of an outbreak at the North Lake Correctional Institution (where Mr. Edouard is currently imprisoned), substantial medical and security challenges would almost certainly arise. A comprehensive view of the danger Mr. Edouard poses to the community requires considering all factors—including this one—on a case-by-case basis. *See, e.g., United States v. Raihan*, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12-19 (E.D.N.Y. Mar.

12, 2020) (deciding to continue a criminal defendant on pretrial release rather than order him remanded to the Metropolitan Detention Center due, in part, to the Magistrate Judge's recognition of the fact that "[t]he more people we crowd into that facility, the more we're increasing the risk to the community").

Mr. Edouard's proposal is that his sentence be amended from the 264-months corporal custodial of which he has served more than half sentence of physical custody be transformed, to be placed on home confinement and on probation custodial for the rest of his remaining sentence. Mr. Edouard presents that, amending his sentence could effectively reduce the severity of his punishment by transferring the remaining of his 262-month physical custodial portion to the probation term custody of it. Mr. Edouard presents that reducing custody sentence and increasing special probation sentence is permissible, because a reduction in sentence to probation is a single indivisible sentence and not separate. See United States v. Thompson, 979 F.2d 743; 1992 U.S. App. LEXIS 29007 (9th Cir. 1992)( In Thompson, the court held that pursuant to Rule 35, the court could amend (5) five years of imprisonment and (5) years of special parole, to (2) two years imprisonment and (8) eight years special parole, this to mitigate the punishment, because the sentence was a single indivisible sentence and not separate).

Specifically, Mr. Edouard would remain under the jurisdiction of the Attorney general and probation for a period of whatever term of probation this court determines to be suitable, but the custodial portion of his sentence could be amended to "any term probation" representing the remaining-months physical custody.

Mr. Edouard presents extraordinary and compelling reason for amending his sentence and for release on probation or home confinement. Such release is

6

consistent with the existing extraordinary circumstances of COVID-19. In so concluding, this Court is grievously aware of the current global health crisis caused by COVID-19. The President has declared a National Emergency due to the spread of the novel coronavirus and states and localities across the nation have implemented measures to stymie its rapid spread. And while the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers within the United States and beyond our borders in China and Iran demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection. *See, e.g.,* Danielle Ivory, *"We Are Not a Hospital": A Prison Braces for the Coronavirus,* N.Y. Times (March 17, 2020), https://www.nytimes.com/2020/03/17/us/coronavirus-prisons-jails.html (citing densely populated living conditions, dearth of soap, hand sanitizer, and protective gear, and impossibility of maintaining safe distance between inmates and guards as reasons prisoners are at particular risk of infection). The virus's spread at the Cook County jail in Chicago provides an alarming example: in a single week, the county jail went from two diagnoses to 101 inmates and a dozen employees testing positive for the virus. *See* Timothy Williams et al., *As Coronavirus Spreads Behind Bars, Should Inmates Get Out?*, N.Y. Times (March 30, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

It is critical to underline the news reports that indicate that the virus has already begun infiltrating federal prisons; in FCI, Oakdale, Louisiana, an inmate died after testing positive for the virus and at least 30 other inmates and staff have tested positive. *See* Kimberly Kindy, *An Explosion of Coronavirus Cases Cripples a Federal Prison in Louisiana*, Wash. Post (March 29, 2020),

7

https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.html (hereinafter, *An Explosion of Coronavirus Cases*). To date, at least four employees have tested positive for the virus at the North Lake Correctional Institution where Mr. Edouard is housed. *See* COVID-19, Fed. Bureau of Prisons (March 29, 2020), https://www.bop.gov/coronavirus/.

### FACTORS REGARDING RISK OF DANGER

Mr. Edouard is one of hundreds, if not thousands, of foreign inmates who have been affected by the shift in policy towards U.S. Citizen Inmates however left unmentioned by the U.S. Attorney General's Memo. Mr. Edouard is a perfect candidate because his health makes him at high risk of contracting COVID-19 at his place of confinement. Mr. Edouard will not represent a security risk to any person or the community, as he willingly desires to renounce maintaining himself in this country upon his release. Mr. Edouard is to be released and immediately rendered to immigration authorities for deportation to his country of origin. Mr. Edouard is a Christian religious man, at his near 58-year of age represents a mature and responsible man, who is passive and never had any violent issues with the law. Contrary, Mr. Edouard in the pass has demonstrated his capacity and willingness to accept full responsibility for his actions. Mr. Edouard maintains a positive posture and exposes his shame for his past actions. However, Mr. Edouard may not change his pass but demonstrate that he has rehabilitated and has learned from his mistakes. Upon release, at the age of 58, Mr. Edouard does not pose any risk of danger to the society or threat to public safety. His exemplary record of participation in self-help vocational and educational programs while in prison demonstrate his truly desire to

8

rehabilitate and realistic plans up on release.

Mr. Edouard has demonstrated and presents extraordinary and compelling reason for release. Mr. Edouard does not seek this court for full release from custody, because Mr. Edouard fully understand that such a thing is simply unrealistic, however, Mr. Edouard proposal is to be placed on home confinement and maintained in probation for the rest of what is left of his sentence. Mr. Edouard's family is eager to support him upon release from confinement. Mr. Edouard's family not only are capable of providing housing, but Mr. Edouard was offered employment upon his release. At the age of near 58-years, his desire is to reintegrate to the community as a law abeyant citizen.

Mr. Eduard humbly moves for mercy in the form of adjustment of sentence in the form, transferring his sentence to Home Confinement. Alternatively, this court may transform his physical custody to special probation as this court deems appropriate because an adjustment in sentence to probation is a single indivisible sentence and not separate. He will remain in custody for what is left of his sentence, except that probation custody and not physical.

**WHEREFORE,** Serge Edouard, respectfully pray that this honorable court find worthy of its mercy and grace and grant him relief in the form of home confinement under the CARES Act Confinement Provision. Alternately, Mr. Edouard requests for an amended sentence, specifically, that his physical custody be transfer to special probation for the remaining of his sentence.

Executed and Signed this 5th day of May, 2020.

Respectfully Submitted

9

## CERTIFICATE OF SERVICE

I, Serge Edouard, hereby certify under penalty of perjury, that on this May 5, 2020, I placed a copy of the foregoing Judicial Notice in a Mailbox at the Correctional Institution North Lake., affixed and with sufficient postage. A copy of the same was served to the United States Attorney's office for the Eastern District of New York.

Respectfully Submitted

*Serge Edouard*

Pro se Litigant.

SERGE EDOUARD
CORRECTIONAL INSTITUTION (NORTH LAKE)
Reg. No. 58048-004
P.O. BOX 1500
BALDWIN, MI 49304

10