

## MACEY LAW

June 9, 2020

Honorable Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**RE: United States v. Serge Edouard**
**Criminal Docket No. 05-0400 (ERK)**
**Reply to Judge's Order Granting Defendant's Application for Sentence Reduction**

Dear Judge Korman:

    I am writing in response to your Order of May 21, 2020, granting Defendant's Application for a reduction in sentence pursuant to Amendment 782 of the Guidelines. The Defendant, Mr. Edouard, gratefully accepts your decision to adjust his offense level to 35 and resentence him to a term of 210 months. Mr. Edouard respectfully requests that this Court, as part of the order resentencing the Defendant, grant an a additional reduction of the sentence under U.S.S.G. § 5G1.3(b) to account for time spent in custody that will not be credited by the Bureau of Prisons. Mr. Edouard elects to have this Court impose his sentence by written order.

I. <u>Procedural History</u>

    On April 15, 2005, Mr. Edouard was detained in the Southern District of Florida (SDFL) on charges of Conspiracy to Import 5kg or more of Cocaine, Conspiracy to Commit Money Laundering, and Engaging in Monetary Transactions with Criminally Derived Property of Greater Value than $10,000. While in custody and awaiting trial in the SDFL, an indictment was filed in EDNY and a detainer was placed against Mr. Edouard on May 20, 2005.

    Ultimately, after a jury trial in July 2005, he was found guilty on all counts. On September 30, 2005, Mr. Edouard was sentenced to life imprisonment in the SDFL case. After his sentencing, he was placed in a temporary detention facility awaiting his transfer to New York to face charges in the EDNY. On November 1, 2006, he was transferred to a temporary detention facility in Brooklyn, where he remained awaiting trial in the EDNY.

    While in custody in New York, Mr. Edouard entered into an agreement to cooperate with the DEA and began providing substantial assistance to the DEA. He became a witness against a violent Haitian drug trafficker which ultimately lead to a conviction, and disclosed information that lead to the capture of two additional drug trafficking fugitives.

At his initial appearance for this Court on February 25, 2008, he entered into a plea agreement. On February 9, 2010, Mr. Edouard was sentenced in the instant case to 262 months imprisonment. This sentence was ordered to run concurrently with the sentence imposed in the SDFL. Only after his sentencing in EDNY was Mr. Edouard transported to the official BOP designated facility in Allenwood, Pennsylvania, at which time both his SDFL and EDNY sentences commenced.

In 2018, Mr. Edouard's SDFL sentence was reduced pursuant to a Rule 35 motion filed by the government. While preparing for his resentencing, it was discovered that BOP was not crediting Mr. Edouard's EDNY sentence with any time he had spent in custody prior to his sentence commencing. This Court is empowered to award the credit to Mr. Edouard that BOP has denied him by proportionally reducing Mr. Edouard's sentence by the number of months he spent in custody prior to his sentencing.

II. Legal Standard

Although credit determinations under § 3585(b) are the responsibility of BOP, this Court has a duty to cure unfairness in BOP's credit determinations by "adjusting" a defendant's sentence to account for time previously spent in detention for "another offense that is relevant conduct to the instant offense." United States Sentencing Guidelines § 5G1.3(b)(1), and comment (n. 2 (C) and (D)); see also United States v. Gonzalez, 192 F.3d 350, 353 (2d Cir. 1999). Notably, § 5G1.3(b)(1) is mandatory, not discretionary.

In Gonzalez, the defendant was arrested and awaiting trial on state drug charges in New Jersey, when he was indicted on federal drug charges. See id at 352. He was transferred to federal custody and began cooperating and testifying against other drug traffickers. See id. As a result, he entered a plea to the federal charges and at sentencing, the government recommended a downward departure based upon his substantial cooperation. See id. The defendant also sought credit for the time he spent in state custody as the charges stemmed from the same criminal conduct. See id at 353. The district court attempted to backdate the beginning of the defendant's sentence in order to credit him with the time he spent in state custody, which the Second Circuit found was improper. See id. The Second Circuit held that "[t]he proper way to ensure that Gonzalez served a total of 156 months would have been for the court to increase the downward departure it granted him and sentence him to 129 months." Id.

III. Discussion

Presentence Credit

Mr. Edouard spent nearly five years in federal detention prior to his sentencing, including time for an undischarged sentence in his SDFL for the same criminal conduct for which he was sentenced in this case, yet he will not receive credit for any of this time from the Bureau of Prison.

Much like the defendant in Gonzalez, Mr. Edouard entered into a plea agreement in this case that included an agreement to cooperate with the DEA. A substantial amount of his time in custody prior to his sentencing was spent providing highly material and fruitful assistance to the

135 San Lorenzo Avenue, PH-830 · Coral Gables, FL 33146 • Telephone: (305) 860-2562 • Facsimile: (305) 675-5841
www.DavidMacey.com

government that lead to the capture and conviction of multiple drug traffickers. Most notably, Mr. Edouard, a Haitian man, was a listed witness against Guy Philippe, a Haitian National Police Officer turned violent coup leader turned Senator, who remains a heroic figure in Haiti. Philippe notoriously lead a rebel army was funded by million-dollar profits from Colombian drug cartels who he gave unrestricted access to Haiti for cocaine trafficking and carried out political assassinations to protect these operations. Mr. Edouard was prepared to testify about his personal experience being extorted by Philippe in exchange for his "protection." Mr. Edouard's identification as a witness exposed not only him but also his love ones still living in Haiti to imminent and extreme danger at the hands of Philippe's co-conspirators.

## COVID-19

It should further be considered that while in detention, Mr. Edouard contracted COVID-19 ("Coronavirus"), which the Bureau of Prisons was unable to protect him from or provide adequate treatment to alleviate his suffering. He has experienced high fever, shortness of breath, coughing, and fatigue. While recent medical studies show that up to 80% of Coronavirus positive patients are asymptomatic, there is a very troubling outlook for severe cases, i.e. patients who are symptomatic. These severe cases are starting to experience long-term physical consequences after their initial "recovery," including blot clots, strokes, heart attacks, lung damage, and neurological defects.

The Office of the Attorney General issues two Memorandums to the Bureau of Prisons as a result of the COVID-19 pandemic – "Prioritization of Home Confinement As Appropriate in Response to COVID-19 Pandemic," dated March 26, 2020 and "Increasing Use of Home Confinement at Institutions Most Affected by COVID-19," dated April 3, 2020. Attorney General Barr indicated he was exercising his authority under the CARES act and instructing each facility to evaluate ALL inmates for release to home confinement notwithstanding eligibility for same, because BOP has a "profound obligation to protect the health and safety of all inmates." A top consideration for release includes "a verifiable re-entry plan that that will prevent recidivism and maximum public safety[.]"

## Voluntary Deportation

Despite his medical condition, the Bureau of Prisons will not even consider Mr. Edouard for release to home confinement because of his immigration status. However, distinctly in line with the concerns of Attorney General Barr, Mr. Edouard has a re-entry plan that poses no threat to public safety, nor risk of recidivism. Mr. Edouard has agreed to voluntary deportation upon the conclusion of his sentence. Mr. Edouard's participation as a government informant against prominent Haitian rebel leaders effectively guarantees he will not return to a life of crime upon his return to Haiti.

IV. Conclusion

This Court is empowered to grant an additional reduction of Mr. Edouard's sentence, pursuant to § 5G1.3(b), to account for the time he spent in detention from his initial arrest in the SDFL on April 15, 2005 until his sentences commenced on February 9, 2010. Therefore, Mr. Edouard requests that this Court grant him a presentence credit reduction of 58 months and sentence him to a total of 152 months in this case.

Page 3/4

135 San Lorenzo Avenue, PH-830 • Coral Gables, FL 33146 • Telephone: (305) 860-2562 • Facsimile: (305) 675-5841
www.DavidMacey.com

Defendant, Serge Edouard, respectfully requests that this Court's sentencing order reflect:
- An adjustment pursuant to § 5G1.3(b)(1) of 58 months for time spent in custody in the SDFL because this time will not be credited by the Bureau of Prisons;
- Resulting in a total sentence of 152 months;
- Which shall run concurrently with his SDFL sentence;
- And all other conditions previously imposed shall remain unchanged.

    Respectfully Submitted,

    By: /s/ David W. Macey
    David W. Macey, Esq.
    Florida Bar No. 185612
    135 San Lorenzo Ave, Suite 830
    Coral Gables, FL 33146
    Telephone: (305) 860-2562
    dm@davidmacey.com

Page 4/4

135 San Lorenzo Avenue, PH-830 · Coral Gables, FL 33146 • Telephone: (305) 860-2562 • Facsimile: (305) 675-5841
www.DavidMacey.com